### SHUTTEE v. COALGATE GRAIN CO.

No. 8833—Opinion Filed April 30, 1918.

(172 Pac. 780.)

**Principal and Surety—Release of Part of Sureties—Effect.**

On appeal from judgment in a justice of the peace court to the district court, A. became surety on an appeal bond for B., C., and D. In the district court the creditor settles with B. and C. for one-half the amount in dispute, and dismisses the case with prejudice as to them. Held, that the settlement with and release of B. and C., and without the consent of A., operates to release him also; and further held, that it is immaterial whether a release of all the principals is effected, as a release of any one operates to release the surety.

(Syllabus by Springer, C.)

Error from District Court, Coal County; J. H. Linebaugh, Judge.

Action by the Coalgate Grain Company by way of motion or judgment on an appeal bond against Otto A. Shuttee, surety. Judgment for plaintiff, and defendant excepts and brings error. Judgment reversed, and case remanded, with directions to enter judgment for defendant.

John E. Du Mars, C. O. Blake, R. J. Roberts, W. H. Moore, and J. G. Ralls, for plaintiff in error.

Opinion by SPRINGER, C. In this opinion the plaintiff in error will be referred to as surety, and the defendant in error will be referred to as creditor. On the 4th day of September, 1915, the creditor obtained a judgment in the justice of the peace court of Coalgate district in Coal county, Okla., against Jacob M. Dickinson and H. U.

Mudge, receivers of the Chicago, Rock Island & Pacific Railway Company, and O. B. Goodwin for the sum of $164.47 and the costs of the case. The case was taken by appeal to the district court of Coal county, with Dickinson, Mudge, and Goodwin as principals on the bond, and Otto A. Shuttee as their surety. In the district court the creditor settled with Dickinson and Mudge, as receivers of the railway company, and dismissed the case as to them. The creditor then took judgment against Goodwin for $82.23 and the costs of the action, and issued execution thereon, which was returned nulla bona. The creditor then took action against the surety by way of motion or judgment upon the bond according to the provisions of section 5477, Rev. Laws 1910. Among the other things, the bond provides:

"Know all men by these presents, that Jacob M. Dickinson and Henry U. Mudge, receivers of the Chicago, Rock Island & Pacific Railway Company, and O. B. Goodwin, as principals, and Otto A. Shuttee, as surety, are held and firmly bound unto the Coalgate Grain Company in the sum of $400, well and truly to be paid.

"The conditions of this obligation are such that, whereas, the plaintiff, the Coalgate Grain Company, has heretofore, on the 4th day of September, 1915, obtained judgment in the sum of $164.47 and costs against the above named defendants in the above court and cause, from which the defendants desire to appeal to the district court of Coal county, Okla.

"Now therefore, if Jacob M. Dickinson and Henry U. Mudge, receivers of the Chicago, Rock Island & Pacific Railway Company, and O. B. Goodwin shall prosecute their appeal to effect and without unnecessary delay, and if judgment be rendered against them on appeal, shall satisfy such judgment and costs, this undertaking shall be null and void; otherwise to remain in full force and effect," etc.

To the motion for judgment against the surety he appealed and filed an answer thereto, as follows:

"Comes now Otto A. Shuttee and for his answer to the motion of the plaintiff to enter up judgment against him on a certain appeal bond denies any liability on the bond for the reason that one of the principals of said bond, the receivers of the Chicago, Rock Island & Pacific Railway Company, the movant herein, released from any liability on said bond. It is further denied that any consideration was paid said Otto A. Shuttee by O. B. Goodwin for said Otto A. Shuttee's services as surety.

"Wherefore Otto A. Shuttee prays judgment of the court."

Issues being thus joined on the motion and answer thereto the case was tried to the court upon the following agreed state of facts:

"It is hereby stipulated and agreed that this motion shall be submitted on the following statements of facts: (1) That the judgment was rendered in the court of the justice of the peace for $164.47 against receiver of the Chicago, Rock Island & Pacific Railway Company and O. B. Goodwin. Thereafter bond was filed on behalf of O. B. Goodwin and receiver of Chicago, Rock Island & Pacific Railway Company with Otto A. Shuttee as surety. Thereafter the receiver of the Chicago, Rock Island & Pacific Railway Company obtained a release from the plaintiff, and the action in the district court as against them was dismissed. Thereafter judgment was taken against O. B. Goodwin in the sum of $82.23, execution was issued against O. B. Goodwin and returned no property found. Thereafter notice was duly served upon Otto A. Shuttee and motion upon which the case is now pending was filed and a hearing was had on said motion this September 5, 1916.

"Witness our hands this the 5th day of September, 1916."

The matter being thus presented, the court rendered judgment against the surety for the sum of $82.23 and costs of the action, to which finding and judgment of the court the surety duly reserved his exception.

Section 1043, Rev. Laws 1910, provides:

"A guarantor is exonerated, except so far as he may be indemnified by the principal, if by any act of the creditor, without the consent of the guarantor, the original obligation of the principal is altered in any respect, or the remedies or rights of the creditor against the principal, in respect thereto, in any way impaired or suspended."

Section 1052, Rev. Laws 1910, provides:

"A surety cannot be held beyond the express terms of his contract, and if such contract prescribes a penalty for its breach he cannot in any case be liable for more than the penalty."

Section 1056, Rev. Laws 1910, in part provides:

"A surety is exonerated:
"First. In like manner with a guarantor.
"Second. To the extent to which he is prejudiced by any act of the creditor which would naturally prove injurious to the remedies of the surety or inconsistent with his rights, or which lessens his security. * * *"

Brandt on Suretyship and Guaranty (3d Ed.) § 164, vol. 1, furnishes the following language:

. "As a general rule, if the principal is released by the creditor without reservation, the surety is also thereby discharged. Thus a joint judgment was obtained against the principals and sureties on a note. The creditor agreed with one of the principals to discharge him from the judgment if he would give security for the payment of about one-fourth of the amount thereof and the security was accordingly given. Held, the sureties were thereby discharged."

This question was presented to the Supreme Court of the state of Washington in the case of Friendly v. National Surety Co. of N. Y. et al., 46 Wash. 71, 89 Pac. 177, 10 L. R. A. (N. S.) 1160, wherein it is said:

"We have no doubt that the release of Thomas by the appellant released the surety company from any liability for the default of the new partnership, for the rule is that the 'surety is only bound to the extent and in the manner and under the circumstances he consented to become liable.' Brandt Suretyship & Guaranty (2d Ed.) §§ 118, 119; 27 Am. & Eng. Enc. of Law (2d Ed.) p. 459; London & L. Ins. Co. v. Holt, 10 S. D. 171, 72 N. W. 403; Standard Oil Co. v. Armnestad, 69 N. W. 197, 6 N. D. 255, 34 L. R. A. 861, 66 Am. St. Rep. 604; White Sewing Machine Co. v. Hines, 61 Mich. 423, 28 N. W. 157; Dupree v. Blake, 148 Ill. 453, 35 N. E. 867. The respondent became surety for all three of the partners, and probably considered the responsibility of each of them when it entered into the contract. When the application was first made, the surety company might have consented to become surety for two of the partners without the other. It actually did so refuse before any liability accrued upon the contract. Respondent certainly had a right to make its own contract in its own way, and to stand upon the strict terms thereof. A material alteration, such as changing the contractor without its consent, was not binding upon it. The release of Thomas by the appellant had the effect to make a new contract, for which respondents never became liable. Under these facts, we are clear that the judgment of dismissal as to the respondent was right. The judgment is therefore affirmed."

12 R. C. L. p. 1085, in part lays down the following rule:

"But, as a general proposition, where the release of the principal debtor is the act of the creditor and the guarantor does not consent thereto, the guarantor is discharged." Frost v. Harbert, 20 Idaho, 336, 118 Pac. 1095, 38 L. R. A. (N. S.) 875.

The principle involved in this case has been disposed of by this court in the case of Dolese Bros. Co. v. Chaney & Rickard et al., 44 Okla. 745, 145 Pac. 1119:

"In interpreting the terms of a contract or suretyship, the same rules will be observed as in the case of other contracts (section 2961, Stat. 1890; section 1053, Rev. Laws 1910); but, after being so interpreted, and the intelligible meaning of its language is ascertained, the same will be construed and applied strictly, in favor of the surety, and so as to not allow any implication against him (Lamm v. Colcord, 22 Okla. 493, 98 Pac. 355, 19 L. R. A. [N. S.] 901; Eager et al. v. Seeds et al., 21 Okla. 524, 96 Pac. 227; Lowe et al. v. City of Guthrie, 4 Okla. 287, 44 Pac. 198). A. H. Reed and C. E. Dawkins, being sureties, are not bound beyond the express terms of their contract. Section 2960, Stat. 1890 (section 1052, Rev. Laws 1910); Lamm v. Colcord, supra; Eager et al. v. Seeds et al., supra; Penny v. Richardson, supra; Lowe et al. v. City of Guthrie, supra. Also see section 2961, Stat. 1890 (section 1053, Rev. Laws 1910); section 2965, Stat. 1890 (section 1057, Rev. Laws 1910); Guthrie Nat. Bank v. Fidelity & Deposit Co., 14 Okla. 636, 79 Pac. 102. And sureties for one person, as for J. W. Chaney, are not liable for several, as for J. W. Chaney and C. M. Rickard, nor are sureties for several, as for J. W. Chaney and C. M. Rickard, liable for one, as for J. W. Chaney alone. 1 Brandt on Suretyship and Guaranty (3d Ed.) §§ 134, 135, pp. 284-288; Pingrey on Suretyship and Guaranty (2d Ed.) §§ 83, 84; Spencer on Suretyship, § 198; 27 Am. & Eng. Enc. L. (2d Ed.) 459, 460; 32 Cyc. 184."

The surety had a right to make his own contract and to say for whom and under what circumstances and to what extent he would become liable. Shuttee did not become surety for Goodwin alone, but for Dickinson and Mudge as well. That was the contract he made.

The creditor had no right to create an obligation for the surety without his consent. When the creditor released Dickinson and Mudge, its right of action and remedy against them was suspended, and their release operated injuriously to the remedies of the surety because he always has the right of subrogation against the principal, and when they were once released he could not recover over against them because they were discharged from debt, and owed the creditor nothing, and the surety could not recover money paid to the use of the principal as they owed nothing, and if the surety should make a payment it could not be for the use of the principal debtor. The principle on which the law operates to discharge the surety where the creditor has released the principal without his consent is his right to recover over against his principal, who, being released, owes nothing, and as the principal owes nothing, by parity of reasoning it must be asserted the surety can owe nothing. It is as if the debt had been paid by the principal.

A law that would allow the creditor to release the principal without the consent of the surety and hold him would deny his right to make his own contract and to say for whom and under what circumstances and to what extent he would become liable. It would hold him against the plain command of the statute which releases him "to the extent to which he is prejudiced by any act of the creditor which would naturally prove injurious to the remedies of the surety or inconsistent with his rights, or which lessens his security," or "if by any act of the principal is altered in any respect, or the remedies or rights of the creditor against the principal, in respect thereto, in any way impaired or suspended."

On appeal from a judgment in a justice of the peace court to the district court A. became surety on an appeal bond for B., C., and D. In the district court the creditor settles with B. and C. and dismisses the case with prejudice as to them. Held, that the settlement with and release of B. and C., without the consent of A., operates to release him also; and further held, that it is immaterial whether a release of all the principals is effected, as a release of any one operates to release the surety.

The judgment of the lower court is reversed and the case is remanded, with directions to render judgment for the surety

By the Court: It is so ordered.